**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | <u>**Filed Under Seal**</u> |
| | ) | |
| **v.** | ) | **No. 1:22-cr-229** |
| | ) | |
| **SHAWN MASIDONIO,** | ) | **Hon. Michael S. Nachmanoff** |
| | ) | |
| **Defendant.** | ) | |

**On Appeal from the United States Magistrate Court**
**for the Eastern District of Virginia**
**The Honorable William E. Fitzpatrick**
**(No. 1:22-mj-70)**

---

### BRIEF OF THE APPELLANT

---

At sentencing in this class B misdemeanor case, the Court ordered a presentence report and the parties submitted sentencing positions. The defense position included detailed mitigation evidence, including a psychological report that bore on defendant Shawn Masidonio's offense conduct. But at the sentencing hearing on November 15, 2022, the magistrate court focused almost exclusively on what it viewed as aggravating factors, while misconstruing or ignoring the mitigating factors. It imposed a sentence just shy of the six-month statutory maximum, noting that the variance was only to hold out the possibility of further punishment for Mr. Masidonio. This Court should vacate and remand the sentence imposed on defendant Shawn Masidonio for three independent reasons: because it relied on erroneous information

in violation of Mr. Masidonio's due process rights, and because it was both procedurally and substantively unreasonable.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 18 U.S.C. §§ 3231, 3401, and 3402, and Federal Rule of Criminal Procedure § 58(g)(2).

## STATEMENT OF THE ISSUES

1.  Whether the magistrate court violated Mr. Masidonio's due process rights by relying on materially incorrect information when it assumed that Mr. Masidonio had never faced any consequences for his conduct, when, in fact, the record reflected that he had been incarcerated for 30 days as a result of his April 14, 2022, arrest and thereafter conformed his conduct. *See Townsend v. Burke*, 334 U.S. 736 (1948).

2.  Whether the magistrate court's sentence was procedurally unreasonable because the court failed to "address or consider all non-frivolous reasons presented for imposing a different sentence and explain why he ha[d] rejected those arguments." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019).

3.  Whether, considering the totality of the circumstances, the magistrate court's sentence was substantively unreasonable because it was "longer than necessary to serve the purposes of sentencing." *United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020).

## STATEMENT OF THE CASE

The conduct that led to Shawn Masidonio's prosecution in this Court occurred on August 1, 2020. Mr. Masidonio grabbed ███████████████, A.S., by the arm and threw him onto a mattress in the family's living room. A.S.'s arm broke as a

result.  Mr. Masidonio █████████████████, immediately took A.S. to the

hospital.  Perhaps unsurprisingly for a young child, A.S.'s reporting of what exactly

happened varied, but ultimately he told medical staff that Mr. Masidonio had grabbed

him by the arm in anger.  Mr. Masidonio said they were wrestling at the time.  ████



███████████████████████████████████████████  An investigation

ensued.  Ultimately, Mr. Masidonio was charged in this Court on March 21, 2022,

with one count of simple assault, in violation of 18 U.S.C. § 113(a)(5), in connection

with the August 2020 incident.  Dkt. Nos. 1, 2.  █████████████████████████

████████████████████████████.[1]

Once the criminal information initiating these proceedings was filed, a

summons was issued to Mr. Masidonio advising him of an initial appearance before

this Court on April 18, 2022.[2]  Dkt. Nos. 5, 6.  On April 14, 2022, Mr. Masidonio was

arrested in Baltimore, Maryland, on unrelated charges.  PSR ¶ 21.  He was detained

for the next 32 days until May 16, 2022.  PSR ¶ 21; Def. Sentencing Memo., Dkt. No.

30, at 7 & Exhibit B at 2.  As a result of his detention in Baltimore, Mr. Masidonio

missed his initial appearance before this Court, *see* Def. Sentencing Memo at 7 n.3,

and an arrest warrant was issued, Dkt. No. 8.  Several days after his release from the

Baltimore jail, Mr. Masidonio turned himself in on the instant charge in the District

---

[1] The presentence report and the defense position on sentencing addressed this in
more detail.  *See* PSR ¶¶ 11-13; Def. Sentencing Memo, Dkt. No. 30, at 3-4.

[2] The summons was served on Mr. Masidonio's uncle at an address in Los Angeles,
California.  Dkt. No. 6.

of Maryland. Dkt. Nos. 16-17. He was ordered released on bond with instructions to report to the Eastern District of Virginia. Dkt. No. 16. Mr. Masidonio was released on May 27, 2022, and made his initial appearance in this Court that same day. Dkt. Nos. 11-20; PSR at p. 1, ¶¶ 3-5. After his release on bond, Mr. Masidonio resided with his father and step-mother at their home in Lexington, South Carolina. PSR ¶ 41. He got a job at a local restaurant and engaged in counseling through the U.S. Pretrial Services Office. PSR ¶¶ 3-5, 46, 56. He consistently complied with the terms of his bond. PSR ¶ 5.

On September 6, 2022, Mr. Masidonio pled guilty to the one-count criminal information. There was no agreed statement of facts nor written plea agreement. At the plea hearing, the government read a brief statement of facts into the record.

The magistrate court sought a presentence investigation prior to sentencing, which neither party opposed.[3] Sentencing was scheduled for November 15, 2022. Both parties submitted sentencing memoranda. Dkt. Nos. 28, 30-31. The defense sentencing memorandum highlighted Mr. Masidonio's 12 years of service in the U.S. Army, ███████████████████████████████████████████████ ████████████████, the turmoil in Mr. Masidonio's life after he injured ████████, and, importantly, his consistently clear conduct after his April 2022 arrest in Baltimore and while on bond in this Court, including his engagement in therapy, sobriety, steady work, and reengagement with family. *See* Dkt. No. 30. The defense

---

[3] The Sentencing Guidelines do not apply to class B misdemeanors such as this one. *See* USSG § 1B1.9.

provided supporting documentation for these points, including letters from family and a psychological evaluation prepared by Dr. Michael Lynch.  *See id.*

Mr. Masidonio traveled from South Carolina to Alexandria for the sentencing hearing on November 15, 2022.  At sentencing, the magistrate court imposed four months of incarceration followed by five years of probation.  In imposing that sentence, the court stated that it would have imposed six months of incarceration but for the fact that doing so would mean Mr. Masidonio could not be re-incarcerated on a probation revocation.  *See* Sentencing Hr'g Tr. at 6, 14-15, attached as Appendix A.

After announcing the sentence, the magistrate court remanded Mr. Masidonio immediately, notwithstanding his compliance on bond.  The court rejected a defense request for self-surrender in light of Mr. Masidonio's travel to attend the hearing and obligations in South Carolina.  *See id.* at 17.

## STANDARD OF REVIEW

A reviewing court considers a constitutional challenge to a sentence *de novo*. *United States v. Malloy*, 568 F.3d 166, 180 (4th Cir. 2009).

The reasonableness of a sentence is subject to review for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).  When reviewing the reasonableness of an offense for which there exists no applicable sentencing guideline, such as a Class B misdemeanor, courts consider whether the sentence is "plainly unreasonable." *United States v. Finley*, 531 F.3d 288, 294 (4th Cir. 2008).  The Court first considers whether the sentencing court committed any "procedural error, such as . . . failing to adequately explain the chosen sentence." *Id.* "If there is no significant procedural error," the Court will "consider the substantive reasonableness of the sentence

5

imposed under an abuse-of-discretion standard." *United States v. Zuk*, 874 F.3d 398, 409 (4th Cir. 2017). That analysis takes "into account the totality of the circumstances." *Id.*

## ARGUMENT

### I. The Sentencing Court Violated Due Process by Imposing a Sentence Based on Inaccurate Information about Mr. Masidonio's Criminal History

A criminal defendant has a due-process right to be sentenced based on accurate information. *See United States v. Powell*, 650 F.3d 388, 393 (4th Cir. 2011); *United States v. Inglesi*, 988 F.2d 500, 502 (4th Cir. 1993); *United States v. Headspeth*, 852 F.2d 753, 755 (4th Cir. 1988). Indeed, it is well-established that "[d]ue process forbids reliance on materially false or unreliable information in imposing sentence" on a criminal defendant. *See United States v. Watson*, No. 92-6763, 1993 WL 425128, at *2 (4th Cir. Oct. 21, 1993) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948)). *See also United States v. Dalzell*, 455 F. App'x 306, 310-11 (4th Cir. 2011).

Courts have applied this due-process principle to situations where the sentencing court specifically referred to facts surrounding the defendant's criminal record that were later shown to be invalid or false. In *Townsend v. Burke*, for example, the Supreme Court found that the criminal defendant was prejudiced by the sentencing court's misreading of the record, and that he "was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." 334 U.S. at 741.

To show a due process violation based upon materially false information, the defendant need only show that (1) the challenged information is false, and (2) the

6

**FILED UNDER SEAL**

false information was relied on by the court in sentencing. *See Watson*, 1993 WL 425128, at *2.

In Mr. Masidonio's case, the sentencing court repeatedly emphasized the need for incarceration as punishment because Mr. Masidonio's prior charges resulted in "no consequences." Sentencing Hr'g Tr. at 13:11-15 (Appendix A). The sentencing court further underscored that "that changes today." *Id*. But Mr. Masidonio's prior charges *did* result in consequences, and not just any consequences, but a month of incarceration. And, moreover, that consequence spurred a change in his behavior as his six months on bond for this Court demonstrated.

Mr. Masidonio spent 30 days in the Baltimore, Maryland, jail as a result of his April 14, 2022, arrest in Baltimore. *See id*. at 7; PSR ¶ 21; Def. Sentencing Memo, Dkt. No. 30 at 4 & Ex. B at 2. Ultimately, the case was resolved without a conviction. PSR ¶ 21. And yet the magistrate court heavily weighed that prior arrest at sentencing, despite that Mr. Masidonio was not convicted of the offense, and while entirely overlooking its serious consequences. *See* Sentencing Hr'g Tr. at 13-14 (Appendix A). Moreover, the magistrate court drew another erroneous conclusion from the Baltimore arrest, which was that this conduct had no impact on Mr. Masidonio. *See id*. at 14. But again, this was belied by the facts in the record. After his release from the Baltimore jail, Mr. Masidonio had turned himself around. He appeared in this Court and thereafter was sober, engaged in treatment, and working. PSR ¶¶ 3-5, 41, 56.

FILED UNDER SEAL

Furthermore, the magistrate court also relied on Mr. Masidonio's 2021 arrest in Arizona as additional evidence that he had not learned his lesson or faced consequences. *See* Sentencing Hr'g Tr. at 13 (Appendix A). But there again the magistrate court appeared to mistake the facts. Mr. Masidonio was arrested in Arizona in 2020 but the case was dismissed after he successfully completed a period of community service and a class. PSR ¶ 20.

Before these incidents—both of which occurred after Mr. Masidonio hurt ▬ ▬—Mr. Masidonio did not have a criminal record. That is, Mr. Masidonio appeared to decompensate after the August 1, 2020, incident that led to this case, but once he was arrested and faced consequences, he pulled himself back together and conformed his conduct.

Thus, not only is the notion that Mr. Masidonio faced "no consequences" for his other brushes with the law inaccurate, but the sentencing court's own words make clear that this was a material fact in Mr. Masidonio's sentencing determination. *See* Sentencing Hr'g Tr. at 13 (Appendix A). As such, this court must vacate the sentence and remand for a sentencing hearing that does not violate Mr. Masidonio's constitutional right to due process.

## II.    The Sentence is Procedurally Unreasonable because the Sentencing Court Failed to Consider Every Nonfrivolous Mitigation Argument

A sentencing court must address or consider every non-frivolous mitigation argument a defendant presents. *See, e.g.*, *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019). The lower court did not address nine of Mr. Masidonio's ten

FILED UNDER SEAL

arguments in favor of a lower sentence. That error makes Mr. Masidonio's sentence procedurally unreasonable; this Court should vacate and remand for resentencing.

### A.   A Sentencing Court Must Consider Every Non-Frivolous Mitigation Argument

Procedural reasonableness requires that the sentencing court conduct an "individualized assessment" and "adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 50 (2007). To satisfy those criteria "[u]nder the law of this circuit[,] a [sentencing] court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why he has rejected those arguments." *Ross*, 912 F.3d at 744 (citing *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017); *United States v. Slappy*, 872 F.3d 202, 207 (4th Cir. 2017)). The requirement that a court address each non-frivolous mitigation argument ensures the availability of "meaningful appellate review" and "promote[s] the perception of fair sentencing." *Slappy*, 872 F.3d at 208 (citing *Gall*, 552 U.S. at 50)). When a judge violates that rule, the resulting sentence is procedurally unreasonable, and this Court must vacate and remand. *See Ross*, 912 F.3d at 744; *Blue*, 877 F.3d at 518; *Slappy*, 872 F.3d at 208. *See also, e.g.*, *United States v. Blake*, 841 F. App'x 535, 539 (4th Cir. 2021) (reversing and remanding for failure to demonstrate "meaningful consideration" of defendant's mitigating arguments, including defendant's military service).

*Ross* and *Blue* illustrate the point. In *Ross*, a jury convicted the defendant of three child-pornography offenses. *See* 912 F.3d at 742. At the time of sentencing, the defendant already had received a 120-month term of confinement for a prior state-

court sex offense involving a minor.  The government requested a consecutive 120-month term for the federal offense.  *See id*. at 743.  Defense counsel responded that such a sentence would, in essence, amount to an above-guidelines sentence of 240 months.  Defense counsel also raised a number of other mitigation arguments similar to the arguments Mr. Masidonio made in in this case.  Defense counsel argued, for instance, that the "the defendant had mental-health issues that prevented him from fully expressing his remorse" and that "Ross maintained gainful employment."  *Id*. The district court imposed the 120-month sentence the government requested.  It found that "the offense is a serious one," expressed "concern[] about the lack of remorse," and suggested that general deterrence required the sentence it was imposing.  *Id*. at 743-44.

The Fourth Circuit Court of Appeals reversed, holding that the district court "did not follow circuit precedent" requiring courts to consider "all non-frivolous reasons presented for imposing a different sentence and explain why he has rejected those arguments."  *Id*. at 744.  For example, the district court did not engage with counsel's arguments related to the defendant's mental health.  And it "did not address Ross's history of gainful employment [or] his role as a caretaker for his aging mother . . . as mitigating factors when calculating his term of confinement."  *Id*. at 745. Although the district court provided some explanation for its sentence, the "post-sentencing commentary [was] non-responsive to Ross's arguments."  *Id*.  This Court still would have needed "to . . . speculate as to the reason for the district court's

sentencing decision." *Id*. at 745. The district court's sentence, therefore, "violate[d] the legal standards for procedural reasonableness." *Id*.

*Blue* further highlights this principle. The defendant in that case "pled guilty to armed bank robbery and brandishing a firearm during a crime of violence." *Blue*, 877 F.3d at 516. At sentencing, defense counsel raised eight arguments in support of a more lenient sentence. *See id*. at 517. As in *Ross*, many of those arguments were similar to the arguments Mr. Masidonio pressed below. The defendant in *Blue* argued, for example, that he should receive a more lenient sentence because "he had successfully found employment and was a hard worker." *Id*. He also noted that he had accepted responsibility for his actions and urged that the guidelines applicable to him were too harsh and did not advance the goal of deterrence. *Id*. In imposing its sentence, the district court mentioned only two of the defendant's eight arguments "and left six . . . unaddressed." *Id*. at 519.

As in *Ross*, the Fourth Circuit reversed. It held that "the district court's failure to address Blue's arguments, as well as its failure to explain whether and why it rejected them, render[ed] Blue's sentence procedurally unreasonable." *Id*.

## B.    The Sentencing Court Erred by Failing to Consider Mitigation Arguments Mr. Masidonio Raised

*Ross* and *Blue* resolve this appeal. Mr. Masidonio presented ten nonfrivolous arguments for the sentence he sought. The lower court addressed only one of these: Mr. Masidonio's drinking. Of all the points to focus on, this was an odd one since there was never an allegation that the August 1, 2020, incident had anything to do with alcohol. Regardless, even then the sentencing court stated only that "if the event

led you to get help to stop drinking, to take a different path, my sentence would be entirely different today, but it didn't." The court did not address that Mr. Masidonio in fact *had* stopped drinking since moving in with his family, and that Mr. Masidonio was indeed *on* the path to rehabilitation that the sentencing Court mentioned. Def. Sentencing Memo at 8.

The lower court did not consider or address the remaining nine mitigation arguments. Those arguments were: (1) Mr. Masidonio "is engaged in and learning from counseling and therapy," *id.* at 9; (2) "he has held his current job steadily since June, broadening his responsibilities," *id.*; (3) he has "admitted that his actions hurt ███████████," *id.* at 1; (4) ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████, *id.* at 2-3; *id.* Exhibit B (Lynch Report) at 7; (5) he is a 12-year Army veteran who saw combat in Iraq, *id.* at 5-6; (6) he had no criminal record prior to this incident, *id.* at 5; (7) he had a troubled upbringing, *id.*; (8) he has benefited from anger management classes, *id.* at 7; and (9) he has "sought mental health treatment" and is awaiting entry into the program, *id.*

Most glaringly, the sentencing court did not address either Mr. Masidonio's military service, nor his ████████████████████████████, which directly pertained to the facts of the offense conduct. The defense submitted, and discussed at length, a 10-page psychological evaluation of Mr. Masidonio prepared by Dr. Michael Lynch, a clinical neuropsychologist and Army veteran with an extensive

professional history of working with service members and veterans. *See id*. Exhibits B & C. The magistrate court did little more than acknowledge the report.

Even more striking, the magistrate court never mentioned Mr. Masidonio's military service. Military service is a commonly accepted mitigating factor, recognized as such by the U.S. Sentencing Guidelines. *See* USSG § 5H1.11; U.S. Sentencing Comm'n Amend. 739. Courts regularly consider a defendant's military service in weighing an appropriate sentence. *See, e.g., United States v. Blake*, 841 F. App'x 535, 539 (4th Cir. 2021); *United States v. Gill*, 150 F. App'x 205, 207 (4th Cir. 2005) (explaining and affirming that district court sentenced defendant to low end of guidelines because of his long military service). *Cf. United States v. Goode*, 309 F. App'x 693, 695 (4th Cir. 2009) (noting district court weighing statutory maximum sentence of 5 years, instead sentenced defendant to 36 months "in light of [defendant's] military service").

While the court did generally and briefly reference Mr. Masidonio's "physical challenges, [ ] psychological challenges or emotional challenges," it did not actually address how those "challenges" factored into its decision, much less did it specifically address the ███████████████████ that may have played a role in the offense conduct. *See* Sentencing Hr'g Tr. at 12 (Appendix A). Instead of addressing this history as a mitigating factor, the court used it to further reprimand Mr. Masidonio, remarking "I'm not sure how you could expect this child to be any different." *Id*. at 11. The █████████████████████ that the defense presented in detail were not merely intended to mitigate the offense conduct by garnering sympathy for

Mr. Masidonio. Rather, Mr. Masidonio's ███████████████████ ██████ bore directly on his offense conduct, helping to explain how he could misperceive the circumstances in which he grabbed ███████ by the arm and report a different version of events than that which A.S. reported. This is made more significant by the fact that the magistrate court highlighted Mr. Masidonio's statement about what happened as an aggravating factor, without ever commenting on the mitigation evidence the defense presented that would counter this factor.

Here, as in *Ross* and *Blue*, the magistrate court's failure to address Mr. Masidonio's non-frivolous mitigation arguments would require this Court to "guess at the district court's rationale," precluding "meaningful appellate review" of Mr. Masidonio's sentence. *Ross*, 912 F.3d at 745. Indeed, the magistrate court's Summary of Proceedings, pursuant to Rule 58(g), is emblematic of its approach at sentencing: The court enumerated in detail seven factors that it found aggravating but elided all of the defense's mitigating evidence in a single sentence. *See* Summary of Proceedings, Dkt. No. 43 at 6-7 (detailing aggravating factors in seven bullet points and adding that two subsequent arrests were also aggravating, but stating "[f]inally, the Court considered and weighed the psychological report and the letters submitted on behalf of Mr. Masidonio" as summary of mitigating evidence). Here, as in *Ross* and *Blue*, the sentence is therefore defective and the Court should vacate and remand for resentencing.

FILED UNDER SEAL

### III.    The Sentence is Substantively Unreasonable Given the Totality of the Circumstances

Substantive reasonableness review typically "entails taking into account the 'totality of the circumstances.'" *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir.2007) (quoting *Gall*, 552 U.S. at 50).  Like procedural reasonableness review, substantive reasonableness review requires the court to "consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the § 3553(a) factors, determine – following the Fair Sentencing Act – whether a given sentence remains appropriate in light of those factors, and adequately explain that decision." *United States v. Swain*, 49 F.4th 398, 403-04 (4th Cir. 2022).  Furthermore, "a sentence is substantively unreasonable if it is longer than necessary to serve the purposes of sentencing." *United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020).

As discussed *supra*, the magistrate court did not "adequately explain [its] decision," *Swain*, 49 F.4th at 403-04, in light of the totality of the circumstances.  That omission alone makes Mr. Masidonio's sentence substantively unreasonable.  However, the unreasonableness is further highlighted when considering the sentence as it relates to the "purposes of sentencing." *See Fowler*, 948 F.3d at 668.

First, the magistrate court highlighted the need "to promote a respect for law."  As discussed *supra*, although the court stated that a sentence of incarceration was needed because Mr. Masidonio's other arrests (both of which occurred after this assault) resulted in "no consequences," *See* Sentencing Hr'g Tr. at 13 (Appendix A), Mr. Masidonio did spend 30 days detained after his April 2022 arrest in Maryland.

FILED UNDER SEAL

The court's explicit reliance on a materially false piece of information undermines any connection to the "purposes of sentencing." *Id.* at 14.

Second, the magistrate court emphasized the need for "adequate deterrence." The court specifically stated that Mr. Masidonio "need[ed] to go to jail to deter [him] from assaulting family members" and that this sentence "will promote the treatment [he] need[s]." *Id.* at 14. But this sentence, and the immediate remand of Mr. Masidonio at the sentencing hearing, will only undermine the progress he made in treatment while on bond, and incarceration surely will not offer replacement treatment options. As explained in the PSR, Mr. Masidonio's family reported that they have seen significant positive changes in him since his release on bond. *See* PSR ¶ 46. Mr. Masidonio has abstained from alcohol, PSR ¶ 50, and refrained from contact with his estranged wife, despite her attempts to contact him. PSR ¶ 40. Moreover, he has maintained employment in which he was doing well, been engaged in anger management classes, and has sought mental health treatment through his probation officer in South Carolina. PSR ¶¶ 45, 46, 50. These are the steps necessary to further the goal of "adequate deterrence," and they were the steps already being taken. Destabilizing this progress by incarcerating Mr. Masidonio more than two years after the offense is thus plainly unreasonable.

Finally, it is significant in this analysis that the sentencing court deemed the statutory maximum sentence appropriate and only refrained from imposing the longest available period of incarceration in order to facilitate imposing the statutory maximum period of probation in addition to incarceration. This sentence selection

FILED UNDER SEAL

does not reflect any consideration for, for example, Mr. Masidonio's lack of significant criminal record, mental health history, military service, and performance on bond. It suggests that this case is among the most aggravated forms of the offense of conviction despite the existence of these substantial mitigators. For this and all of the reasons discussed herein, the sentence of four months of incarceration and five years of probation was substantively unreasonable on the facts of this case.

## CONCLUSION

Accordingly, for all of the foregoing reasons, the Court should vacate the sentence imposed by the lower court and remand for further proceeding.

Respectfully submitted,

SHAWN MASIDONIO

By counsel,
Geremy C. Kamens
Federal Public Defender


 /s/ Cadence Mertz
Cadence Mertz
Va. Bar No. 89750
Assistant Federal Public Defender
Nicholas McGuire
Volunteer Attorney
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA  22314
703-600-0840 (tel)
703-600-0880 (fax)
Cadence_Mertz@fd.org

# APPENDIX A

```
 1                   UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION

 3
      UNITED STATES OF AMERICA,       :
 4                                    :
                    Plaintiff,        :   Criminal Action
 5                                    :   No. 1:22-mj-00070-WEF-1
           v.                         :
 6                                    :
      SHAWN MASIDONIO,                :   November 15, 2022
 7                                    :   10:23 a.m.
                                      :
 8                  Defendant.        :
                                      :
 9    ............................... :

10

11                TRANSCRIPT OF SENTENCING PROCEEDINGS
             BEFORE THE HONORABLE WILLIAM E. FITZPATRICK,
12                  UNITED STATES MAGISTRATE JUDGE

13
      APPEARANCES:
14
        For the United States:      UNITED STATES ATTORNEY'S OFFICE
15                                   Patricia M. Haynes, AUSA
                                     2100 Jamieson Avenue
16                                   Alexandria, VA 22314

17      For the Defendant:          OFFICE OF THE FEDERAL PUBLIC
                                     DEFENDER
18                                   Cadence Mertz, AFPD
                                     1650 King Street, Suite 500
19                                   Alexandria, Virginia 22314

20      Court Reporter:             Diane Salters, B.S., CSR, RPR, RCR
                                     Official Court Reporter
21                                   United States District Court
                                     401 Courthouse Square
22                                   Alexandria, VA 22314
                                     Email: Dianesalters.edva@gmail.com
23                                   Telephone:  (301) 338-8033

24
      Proceedings reported by machine shorthand from an FTR Gold
25    recording.  Transcript produced by computer-aided transcription.
```

*Proceedings*

1          THE DEPUTY CLERK:  *United States versus Shawn*

2   *Masidonio*, Case 1:22-mj-70.

3          MS. HAYNES:  Patricia Haynes on behalf of the United

4   States.  Good morning, Your Honor.

5          THE COURT:  Good morning, Ms. Haynes.  How are you?

6          MS. HAYNES:  Fine.  And you?

7          MS. MERTZ:  Good morning, Your Honor.  Cadence Mertz on

8   behalf of Mr. Masidonio, who is present.

9          THE COURT:  Good morning, Ms. Mertz.  How are you?

10         MS. MERTZ:  Fine.

11         THE COURT:  Well, the defendant is before the Court for

12  sentencing, having pled guilty to simple assault in violation of

13  Title 18, United States Code § 113(a)(5).  This is a petty

14  offense in which a maximum penalty is six months imprisonment,

15  five years of probation, $5,000 fine, and a mandatory $10 special

16  assessment.  Are the parties ready to proceed?

17         MS. HAYNES:  Yes, Your Honor.

18         MS. MERTZ:  Yes, Your Honor.

19         THE COURT:  All right.  Ms. Haynes, it's my

20  understanding that the government has no objections, amendments,

21  or corrections to the presentence report?

22         MS. HAYNES:  Yes.

23         THE COURT:  And, Ms. Mertz, my understanding is you do

24  object to paragraphs 13 through 16 of the presentence report; is

25  that correct?

3

*Proceedings*

1        MS. MERTZ:  Yes.  We noted an objection and we would

2    rest on our argument that's reflected in the PSR.

3        THE COURT:  Okay.  I appreciate that.  So the -- and

4    for the record, paragraphs 13 through 16 are essentially

5    paragraphs dealing with summaries of medical observations that

6    suggest that there has been a pattern of abuse with respect to

7    the victim.  I am going to leave the paragraphs in the

8    presentence report; however, I take your concern, Ms. Mertz, that

9    there is no direct evidence that would specifically link

10   Mr. Masidonio to those injuries, to cause those injuries.  In

11   fact, there is some suggestion that there could be -- in the

12   presentence report that there could be an alternative source for

13   those injuries assuming that those injuries are -- and I think

14   it -- are the product of abuse.  So I think given the uncertainty

15   there, I will not consider paragraphs 13 through 16 in terms of

16   fashioning a sentence with respect to Mr. Masidonio today.

17       Is there any other -- do you have any other objections

18   or amendments or concerns or anything to the presentence report?

19       MS. MERTZ:  No, Your Honor.

20       THE COURT:  Ms. Haynes, do you have any evidence or

21   argument you'd like to present?

22       MS. HAYNES:  Your Honor, I do think these cases can be

23   very difficult when it comes to sentencing because it can be --

24   it's just impossible to know exactly how things transpired, but

25   we do know the critical facts.  We know that the defendant

4

1    was mad at the child, perhaps, because he was watching TV when he

2    shouldn't, and we know that he then threw the child on the bed

3    with enough force to break his arm; and then to avoid

4    responsibility for what he had done, he told the child to say

5    that it was an accident.  So he can argue that he didn't mean to

6    break the child's arm, but I think that that's irrelevant.  He

7    acted out of anger, and a broken arm and surgery for this

8    six-year-old child was the consequence.

9            But, Your Honor, what I think is incredibly revealing

10   and very important at this sentencing is that that didn't stop

11   him.  Breaking the child's arm didn't change him.  His outbursts

12   continued.  Twice since that time, he's assaulted people with

13   similar anger.  First, in Arizona in 2021, he slammed his wife's

14   face into a door, and then in Baltimore in 2022, there was

15   another event for which he was convicted of second-degree

16   assault.  So he can come here and tell you today that he's

17   addressed his anger issues and that everything has changed and

18   that he's now a different person, but I question it.

19           And two other factors, I think, are very concerning

20   here.  I understood what the -- I understand the Court's view on

21   these bruises on the child.  We don't know who inflicted them.

22   The child's mother has a history of being very rough with the

23   child, and so I think it's entirely possible and, certainly,

24   likely that she's the one that did it, but I don't think that

25   excuses the defendant, because he lived with the child, and no

*Proceedings*

1    one can parent a six-year-old child and not see things like that.

2    If you're parenting a six-year-old, you're going to see them in

3    their swimsuit, in their underclothes, in the bathtub.  So even

4    if he did not inflict the injuries, and he probably didn't, he

5    still was aware of them, and he did nothing to stop them.  And he

6    was the parent of that child; and as a parent, he has a duty to

7    protect the child from everything, even if it is his spouse.  And

8    second corroborating that is the fact that this child told his

9    father, when he was with his father, that both the defendant and

10   his mother were mean to him and he didn't want to go back to live

11   with them.

12           So, Your Honor, we believe that anyone who breaks a

13   child's arm in anger should go to jail, and not for a token

14   amount of time, but a significant period of time.  And so as we

15   stated in our motion, we think six months would be appropriate,

16   and that it should be followed by a significant period of

17   probation.

18           THE COURT:  So that's my question -- I'm sorry.  Were

19   you done, Ms. Haynes?

20           MS. HAYNES:  I'm done.

21           THE COURT:  So if -- and I was -- if there is a -- my

22   understanding is if there is a six-month sentence, that there

23   really can't be a term of probation beyond that because there's

24   nothing to revoke.

25           MS. HAYNES:  Your Honor, I apologize.  I don't know.  I

*Proceedings*

1    know there can't be probation when there is intermittent

2    confinement.  That does seem correct, though.

3              THE COURT:  Okay.

4              MS. MERTZ:  Your Honor, I believe that's correct, that

5    probation is a sentence, and six months would be a sentence, and

6    they can't supplant each other.

7              Your Honor, Mr. Masidonio would be the first person, I

8    think, to stand here and tell the Court that he's not a different

9    person today.  He's the same person with a lot more information

10   about his own history as a result of this case.  He's made a lot

11   of progress in the last six months, but I don't think he -- and,

12   certainly, I wouldn't tell the Court that he's reformed entirely

13   because of the things that are at the bottom of his conduct and

14   his life for the last several years are not quickly resolved.

15   Treatment will be a long-term endeavor, something that he is

16   engaged in now, but not something that will be over today or even

17   six months from now.

18             The conditions that Mr. Masidonio has been diagnosed

19   with, and had been diagnosed with years ago by the Army, are not

20   conditions that are going to go away or that can be resolved with

21   a pill.  What they do do, though, is provide an extraordinarily

22   helpful amount of context for some of the situations that

23   Mr. Masidonio has been in and how he reacted to those situations

24   and why it is fair in this situation to look at what happened

25   here not in the way that the government is looking at it, as

*Proceedings*

1    something that needs to be punished with six months of jail time
2    more than two years later, but to try to understand why he
3    reacted the way he did in that situation and to try to make sure
4    that it doesn't happen again.  And Mr. Masidonio, who is now
5    39 years old -- at the time, he would have been 37 -- had no
6    history of violence or hurting anybody up until that point.  And,
7    yes, his life has unraveled for the last two years, and it has
8    been an extremely rocky road for him for the last two years, and
9    that is a consequence of what happened on August 1, 2020.  That
10   is something that he has been through and it has made a
11   significant impact on him, but this is not somebody who has a
12   lifetime history of hurting people.  He never hurt anybody
13   before.

14            Your Honor, the last two years have been extremely
15   difficult for Mr. Masidonio, but after his arrest in the spring,
16   in April, in Baltimore, after which he spent 30 days in jail on
17   that offense, which I believe is in a probation before judgment
18   posture, not a conviction, but then he was re-arrested for this
19   case and spent two more days in jail, somebody who'd never spent
20   time in detention before, who had been serving in the U.S.
21   military for 12 years.  These are consequences that have left a
22   lasting impression on him.  And he was willing, when he was
23   released in May, to start over at the bottom.  He moved back in
24   with his parents, 39 years old, moved back in with his parents;
25   he was working as a line server at a local restaurant.  His car

8

*Proceedings*

1   was repossessed.  He has not had contact with his children.

2   These are consequences that he has lived with every single day,

3   and this conduct has put him in this position, and he is trying

4   to show the Court and himself and everybody around him that he is

5   learning from the treatment that he's getting.  But it's also

6   true that until -- frankly, until he had Dr. Lynch's report,

7   which we submitted with our position paper and is also attached

8   to the presentence report, there's a lot of information that

9   Dr. Lynch was able to uncover that Mr. Masidonio himself hadn't

10  ever really appreciated about how his disorders -- or his

11  conditions are affecting the way he's interacting with the world

12  around him.  He may be reacting poorly to what he perceives to be

13  happening in front of him, but he doesn't know that because he's

14  not seeing the cues he's getting from people around him.

15          So, Your Honor, we would ask the Court to impose the

16  sentence that we have submitted, which is a time-served sentence

17  with two years of probation so that the Court can continue to

18  monitor Mr. Masidonio, so that the Court can continue to ensure

19  that he is getting treatment and engaging in anger management.

20  He's advised me he's about halfway through his anger management

21  program and only has had one meeting with mental health

22  counseling to date.  He had an evaluation and then the one

23  meeting last Wednesday.  His second meeting is tomorrow.

24          Your Honor, it's been more than two years now since

25  this incident occurred, and we would suggest that six months of

*Proceedings*

1   jail time for something that happened more than two years ago is

2   divorcing punishment from the conduct.  But also, this is not

3   conduct that merits a sentence of a statutory maximum.  This

4   happened in an instant.  I don't think there's any dispute

5   about that.  The government is right.  We can't know what

6   happened exactly in that moment, but it's not premedicated; it's

7   not something Mr. Masidonio set out to do.  And at this point in

8   time, he has begun to repair some of the damage.  And to put him

9   in jail for any extended period of time when he is finally

10  starting to get some stability back, I think, would destabilize

11  him in a way that is not productive.

12          THE COURT:  All right.  Thank you, Ms. Mertz.

13          Mr. Masidonio, this is your opportunity to tell me

14  anything you want to tell me about the sentence, about anything

15  you think is at all relevant to my determination about what is a

16  fair and reasonable sentence here.

17          THE DEFENDANT:  Yes, sir.  Pertaining to the events

18  that happened, I am extremely apologetic, and I can't imagine

19  what A███ felt like going through that.  But I can say that I had

20  no idea.  I was aware of one of my disorders, but not to

21  the gravity at which it was explained to me after reading

22  Dr. Lynch's report.  And moving forward, I guess, I would like to

23  address those issues, because I -- in the past, I was always

24  meaning to seek mental health, but I never did because I was just

25  avoiding the situation.  And I would like the opportunity to

*Proceedings*

1    finally address those issues and show the courts that I am doing

2    better and that this was just a moment of instance and not a

3    pattern of misconduct.  And I guess that's all I have to say,

4    sir.

5            THE COURT:  Okay.  Thank you.

6            Even though this is a petty offense, the Court is still

7    properly guided by the statutory factors in 3553(a) -- Title 18,

8    United States Code § 3553(a) and the legislative direction to

9    fashion a sentence that is sufficient but not greater than

10   necessary to satisfy the purpose of the sentencing factors.

11           The first factor is the nature and circumstances of the

12   offense.  Although I think it's clear, as both counsel argue --

13   state, that we don't really know exactly what happened in the

14   room, what we do know is that Mr. Masidonio violently assaulted

15   that child.  The nature of the injuries are significant.  You

16   broke the child's arm in two places:  A fracture of the upper

17   left humerus and a radial dislocation at the elbow.  The force in

18   the injuries that you caused required the child to be taken from

19   Fort Belvoir Hospital to Walter Reed Medical Center for emergency

20   surgery.  Those facts alone suggest that it was a violent event

21   and it's an extremely aggravating factor.

22           The victim, a six-year-old child, was in your custody.

23   You had a duty to care for him.  You had a duty to protect him.

24   And, instead, you abused him physically, and as we'll talk about

25   in a minute, psychologically.

*Proceedings*

1          At the hospital, you lied to the medical staff about
2    how the injury occurred.  You were more concerned about your own
3    well-being, staying out of trouble, not getting caught, that you
4    intentionally gave the medical staff wrong information about how
5    the injury occurred.  The medical staff needed adequate
6    information in order to treat the victim properly.  But, again,
7    you were concerned with yourself, not a seriously injured child.

8          At the hospital, you were belligerent and kept the
9    medical staff from speaking privately with the victim.  Here
10   again, it's evidence of your selfish desire not to get caught
11   without, really, any regard for the child that you injured.  You
12   told the victim to lie to the medical staff about how the injury
13   occurred; again, for your benefit at the expense of the
14   well-being of the child you assaulted.  You put that child in a
15   frightened position of having to choose between lying for his
16   stepfather who had just assaulted him violently, who he was going
17   home with, or tell the truth to a stranger.  Using the child to
18   help cover up your crime is an aggravating factor.  I will not
19   speculate about the long-term impact physically, psychologically
20   on the victim except to say that it seems self-evident that these
21   events will continue to haunt that child.  In fact, it's worth
22   noting that in reviewing your history, the difficulties you
23   faced, the struggles you had continue to affect you today.  I'm
24   not sure how you could expect this child to be any different.

25          There are other aggravating factors that I think that

12

1   are kind of built into the statute.  One is the age:  Six years

2   old; the injury, whether it's serious or substantial, as defined

3   by the code.  I think it's relevant to consider under this

4   3553(a) factor because it's a recognition -- it's congressional

5   recognition that there are different factors that, at least in

6   Congress' eyes, made issues worse.  Now, that doesn't change what

7   you were convicted of, but the fact, the nature of the injury,

8   the significance of the injury, the age of the victim are all

9   significant aggravating factors when considered under the nature

10  and circumstances of the offense.

11          Staying with the 3553(a) analysis, the history and

12  characteristics of the defendant.  Ms. Mertz has done an

13  outstanding job putting together a full picture of your history,

14  of who you are, from the information in the presentence report to

15  the letters from your family, coworkers and others, and,

16  particularly, the Lynch report.  And there is -- with respect to

17  the history and characteristics of you, there is a lot that

18  explains how you got to that date in August of 2020.  The

19  discussion of your physical challenges, your psychological

20  challenges or emotional challenges are clear and are deep, and I

21  am very happy that you're addressing those.  You have a long life

22  to live.  You have a lot of life in front of you, but they do not

23  outweigh the aggravating factors.

24          Ms. Mertz correctly points out that there has been a

25  lot of time between the date of the offense and now, and I

*Proceedings*

1    suspect a lot of that, realistically, had to do with COVID.  It's

2    hard to conduct investigations.  Things were basically shut down.

3    And over those two years -- more than two years, you would have

4    had an opportunity to put yourself in a better position or a

5    worse position.  If the event led you to get help to stop

6    drinking, to take a different path, my sentence would be entirely

7    different today, but it didn't.  Those two years could have

8    helped you and helped explain to the Court that this really was

9    an aberration or explain to the Court or show the Court that you

10   engaged in a pattern of abusive conduct to family members, and

11   that's what the record shows.  After this, June of '21, in

12   Arizona, you engaged in assaultive conduct of a family member.

13   April in 2022 in Maryland, similar, with virtually no

14   consequences.  The conduct was clearly less impactful, but no

15   consequences.  That changes today.

16         Ms. Mertz argues that it was this arrest or a

17   combination of things that sort of led you to discover some

18   things you need to work on and improve yourself.  You're going to

19   have that opportunity, and I hope you've made strides since you

20   were originally arrested, but I do question the sincerity of some

21   of those efforts on your part.  If you were going to genuinely be

22   shocked into addressing your issues, it would have happened in

23   2020 when you were in the hospital with a crying child undergoing

24   emergency surgery to repair an arm that you broke.

25         The other 3553(a) factors are the need for the sentence

14

1    to reflect seriousness of the offense.  It's hard to imagine an

2    offense less serious in this context, in the intentional assault

3    of a six-year-old child who you were responsible for.

4        To promote a respect for the law:  Having had, now,

5    three contacts with the criminal justice system over domestic

6    issues, a sentence of incarceration is needed to promote respect

7    for the law and to provide just punishment.

8        Adequate deterrence:  You need to go to jail to deter

9    you from assaulting family members, particularly vulnerable

10   family members.  There is a need for specific deterrence in this

11   sentence.  That's clear from the pattern of conduct that began at

12   least in August of 2020 and carried through April of 2022.  You

13   have children.  You will see those children again.  I hope the

14   therapy that you get, the help you need will help you deal with

15   your family members in a safe and mature way.  You will also

16   understand that if you don't, I hope you remember the sentence

17   you get today as a deterrent.  The sentence will promote the

18   treatment you need and give you an opportunity to receive the

19   treatment you need.

20       The Court's considered all of the 3553(a) factors.

21   Those are the factors that I think are most significant and most

22   applicable.  I think the government's right:  What sentence is

23   proportionate?  What sentence is reasonable?  What sentence is

24   appropriate is six months, the statutory maximum.  I, however, am

25   going to give you something less than that because I am going to

*Proceedings*

1   put you on probation.  Having consulted the advisory guidelines,

2   having considered the factors set forth in Title 18, United

3   States Code 3553(a), the Court orders the defendant, Shawn Philip

4   Masidonio be sentenced to four months imprisonment within the

5   Federal Bureau of Prisons.  The defendant shall also pay a

6   required $10 special assessment fee.  I will not order any fine.

7   Any disposable income you have should go to support your

8   children.  I don't believe there's a claim for restitution.  I

9   won't order any restitution.  Following completion of the

10  defendant's custodial term, you'll serve five years probation,

11  during which you shall comply with the standard conditions that

12  have been adopted by this Court and are incorporated into this

13  judgment, as well as the following special conditions:  The

14  defendant shall pay for the support of your children in the

15  amount ordered by any social service agency or court of competent

16  jurisdiction, and you shall register with the Department of Child

17  Support Enforcement in any state in which you reside.  You shall

18  abide by any protective order currently in place.  You shall

19  provide the probation officer access to any requested financial

20  information.  If you test positive for controlled substances or

21  show signs of alcohol abuse, you shall participate in a program

22  approved by the United States Probation Office for substance

23  abuse, which program may include residential treatment and

24  testing, to determine whether the defendant has reverted to the

25  use of drugs or alcohol, with partial cost to be paid by you, all

*Proceedings*

1    as directed by the probation office.  You shall abstain from the

2    use of alcohol.  You shall participate in a program approved by

3    the United States Probation Office for mental health treatment --

4    the cost of the program is to be paid by you -- as directed by

5    the probation office.  You shall participate and successfully

6    complete an anger management program.  Those are the special

7    conditions.

8           I'll advise you that pursuant to Rule 58(g), you have a

9    right to appeal your conviction and the imposition of this

10   sentence to a district judge who would act as an appellate court.

11   Any appeal must be taken within 14 days.  I'll continue the

12   appointment of the Office of the Federal Defender to consult

13   with you and to perfect and handle any appeal if you should so

14   choose.

15          At this point, is there anything else from the

16   government?

17          MS. HAYNES:  No, Your Honor.

18          THE COURT:  Is there anything else from you, Ms. Mertz?

19          MS. MERTZ:  Yes, Your Honor.  First, I don't -- maybe I

20   didn't hear, but I didn't hear the Court order mental health

21   treatment as a condition.

22          THE COURT:  It was.  I'll repeat it.  Give me one

23   second.

24          MS. MERTZ:  I take your word for it, Your Honor.  I

25   just didn't get it down in my notes.

*Proceedings*

1       THE COURT:  Any mental health treatment or any mental

2   health programs as ordered by Probation.

3       MS. MERTZ:  Would the Court consider permitting

4   Mr. Masidonio to self-surrender?  He came up here from South

5   Carolina for today's hearing, has a train ticket to return, and

6   has a job and his family.  Would the Court consider that?  And

7   also to recommend that he serve his sentence in South Carolina or

8   as close to South Carolina to be near family?

9       THE COURT:  I'll recommend that you serve the sentence

10  in an appropriate BOP facility in South Carolina.  I'm going to

11  remand him today.  He's going to be remanded immediately to the

12  custody of the U.S. Marshals.

13      MS. MERTZ:  Nothing further, Your Honor.

14      THE COURT:  All right.  We're adjourned.

15      (Whereupon, proceedings concluded at 10:55 a.m.)

16          *      *      *      *      *

17                  CERTIFICATE OF REPORTER

18      I, Diane Salters, hereby certify that the foregoing

19  transcript is a true and accurate record of the stenographic

20  proceedings in this matter.

21

22                              /s/ Diane Salters

23                              _____

                                Diane Salters, CSR, RCR, RPR
24                              Official Court Reporter

25