IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:22-cr-229 |
| v. ) | |
| ) | Hon. Michael S. Nachmanoff |
| SHAWN PHILIP MASIDONIO ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

On Appeal from the United States Magistrate Court
for the Eastern District of Virginia
(No. 1:22-mj-70)

**UNITED STATES' BRIEF IN OPPOSITION
TO APPEAL OF A CRIMINAL JUDGMENT**

The defendant pled guilty to simple assault, a petty offense, in violation of Title 18, United States Code, Section 113(a)(5), after he broke his six-year-old stepson's arm. Following a sentencing hearing, the court orally imposed a sentence of 4 months of incarceration followed by 5 years of probation. The defendant now claims the magistrate court committed error by: 1) violating the defendant's due process rights by relying on incorrect information in fashioning the sentence; 2) failing to consider all non-frivolous reasons justifying a shorter sentence; 3) imposing a sentence longer than necessary; and 4) issuing an amended judgment that differed from the sentence orally pronounced at the sentencing hearing.

**STATEMENT OF THE ISSUES**

I. The defendant's due process rights are not implicated because the magistrate court did not rely on inaccurate information when imposing the sentence.

II. The magistrate court fully considered the mitigation evidence submitted by the defendant and specifically found it did not outweigh the aggravating factors.

III. The sentence of the magistrate court was appropriate and was not longer than necessary considering the defendant was acting in anger when he broke the arm of a six-year-old child in his custody and care, resulting in the transfer of the child to Children's Hospital for emergency surgery, that the defendant was aggressive and would not allow the child to be seen without him present, and the defendant encouraged the child to lie to medical staff by telling them that it was an accident.

IV. The sentence that was orally pronounced by the magistrate court at the sentencing hearing was correct and should be issued in an amended judgment.

## STATEMENT OF THE CASE

On August 1, 2020, the defendant broke the arm of the six-year-old victim. (PSR ¶8). The following day, the child told law enforcement that the defendant had been angry with him and that he had gotten in trouble earlier. (PSR ¶10.) The child said that the defendant tried to take his shirt off while his arms were down by his side then threw him on the bed causing his arm to break. The child further said that while they were still at the house, the defendant told him to say that it was an accident. (PSR ¶10).

The defendant claimed that the injury was an accident and denied harming the child out of anger. (PSR ¶9). The defendant told the nurse at Fort Belvoir Community Hospital that he and the child were wrestling when the child fell. (PSR ¶8). The nurse did not believe the injury pattern was consistent with the defendant's story, and noted the defendant was aggressive and would not allow the child to be seen outside of the defendant's presence. (PSR ¶8).

During a physical examination, medical personnel discovered numerous troubling bruises on the child's body, including bruises on his chest, thigh, eye, shoulder, back, abdomen and genital region, which are characteristic of intentionally inflicted injuries. Dr. Brian W. Brennan, of the Armed Forces Center for Child Protection, reviewed the child's file and noted that such bruises "are most decidedly not commonly seen, and raise concern for inflicted trauma (i.e., child physical abuse)." (PSR ¶14). [1]

The child's biological father informed law enforcement that on previous video chats with his son he had observed that his son would be dirty. He also said that his son had little clothing when he came to visit him. The father also said that his son had previously told him that the defendant and his mother were mean to him and that he didn't want to return to live with them. (PSR ¶12).

On March 21, 2022, the defendant was charged with Simple Assault, in violation of Title 18, United States Code, Section 113(a)(5). An initial appearance was scheduled for April 18, 2022, but due to the arrest of the defendant in Baltimore on April 14, 2022, on an unrelated assault, the defendant missed his initial appearance. (Dkt. 8). The defendant appeared in the Eastern District of Virginia on May 27, 2022, upon his release from the Baltimore City jail. (Dkt. 11).

On September 6, 2022, the defendant pled guilty to the criminal information. Sentencing was scheduled for November 15, 2022. (Dkt. 23). At sentencing, the magistrate court orally imposed four months of incarceration followed by five years of probation. (Sentencing at 15). The written judgment contained a clerical error that referenced supervised release as opposed to probation. (Dkt. 35). The magistrate court issued an amended judgment; however, the amended

---

[1] The government believes it likely that the mother may have been responsible for inflicting the bruises, but that the defendant, as the victim's live-in stepfather, was aware that the child was incurring bruises and did nothing to protect him.

judgment placed the four months of incarceration under the list of conditions of probation. (Dkts 35, 38).

## STANDARD OF REVIEW

A Court reviews a sentence for reasonableness under a deferential abuse of discretion standard. *Gall v. United* States, 552 U.S. 38, 40, 128 S. Ct. 586 (2007). In undertaking this review, the Court first considers whether the district court committed a "significant procedural error, such as . . . failing to consider the § 3553(a) factors . . . or failing to adequately explain the chosen sentence. *Gall,* 552 U.S. at 51, 128 S. Ct. 586.  A procedural sentencing error is harmless if it "did not have a substantial and injurious effect or influence on the result and we can say with fair assurance that the district court's explicit consideration of the defendant's arguments would not have affected the sentence imposed." *United States v. Boulware*, 604 F.3d 832, 838 (4th Cir. 2010). If there is no significant procedural error, then the court considers "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *United States v. Diosdado-Star,* 630 F.3d 359, 363 (4th Cir. 2011); *United States v. Zuk*, 874 F.3d 398, 409 (4th Cir. 2017).

## ARGUMENT

### I. The defendant's due process rights are not implicated because the magistrate court did not rely on inaccurate information when imposing the sentence.

The defendant's brief claims that, "the sentencing court *repeatedly* emphasized the need for incarceration as punishment because Mr. Masidonio's prior charges resulted in 'no consequences.'" (Def. Brief at 8) (emphasis added). However, the sentencing judge did not say that repeatedly; he first stated that the defendant's prior charges resulted in "virtually no consequences," then in the following sentence the judge used the term "no consequences." (Sentencing at 13.) Both are accurate statements because the defendant had avoided any notable punishment for each of the two assaults which followed this one; the only period when the

4

defendant was ever incarcerated on any charge was the approximately 30 days that he spent in pre-trial detention prior to the disposition of his Maryland assault case. Because the defendant did not receive any post-case period of incarceration, it was reasonable for the judge to comment on the lack of repercussions.

The defendant also claims that the sentencing judge "appeared to mistake the facts" with respect to the Arizona case because the judge failed to agree that 10 hours of community service and the completion of an online domestic violence class was adequate punishment. (Def. Brief at 8-9). In that case, the defendant came home from a bar extremely intoxicated and slammed his wife's face into a door while their young children were in the house, which prompted her to flee and run outside to call the police; upon their arrival the defendant continued to yell and bang his head against the patrol car grate. Considering the gravity of the Arizona offense conduct, the punishment was negligible.

Defendant cites *Townsend v. Burke*, 334 U.S. 736, 741 (1948), for the proposition that the magistrate court similarly relied on incorrect information, but it has no comparison to this case. At petitioner Townsend's sentencing, at which no counsel was present, a list of seven previous "convictions" was read and attributed to him. After Townsend ineffectively attempted to dispute several of the charges, he was sentenced to 10 to 20 years in the penitentiary. It later became known that Townsend had been found not guilty of two of the charges and that a third had been dismissed; as a result, the judge had relied on a criminal record that had been grossly exaggerated. In contrast, the magistrate court correctly summarized and analyzed the defendant's prior history.

Additionally, the defendant claims that the magistrate court erroneously failed to recognize that the defendant had "turned himself around" after his release from the Baltimore jail. (Def. Brief at 8). While it is true that the defendant did not incur any new arrests during the slightly less than

six-month period between his release from jail and his sentencing in this case, the defendant was being closely monitored. He was on probation in Baltimore and was under the supervision of Pretrial Services in the Eastern District of Virginia, which ordered him to participate in anger management and mental health testing. (PSR ¶ 3).

An analysis of the defendant's pattern of conduct reveals that breaking his son's arm had no beneficial effect on him and was not a motivator for him to pull himself together. If anything was to have set the defendant on the correct path, it should have been the realization that he had broken a helpless child's arm in anger. Instead, the defendant apparently sees merit in claiming that it was the 30 days in jail that set him on the right path; a self-absorbed outlook in which 30 days in jail weighed more heavily on his mind than a broken arm and surgery for his son.

## II. The sentence was not procedurally unreasonable, and the sentencing court considered all non-frivolous arguments.

A Court "reviews a sentence for reasonableness," *United States v. Diosdado-Star,* 630 F.3d 359, 363 (4th Cir. 2011), "under a deferential abuse-of discretion standard," *Gall v. United* States, 552 U.S. 38, 40, 128 S.Ct. 586 (2007). In undertaking this review, the Court first considers whether the sentencing court committed a significant procedural error, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." *Gall,* 552 U.S. at 51, 128 S.Ct. 586. A sentence is procedurally unreasonable if the court fails to "address or consider all non-frivolous reasons presented for imposing a different sentence and explain why it has rejected those arguments." *United States v. Webb*, 965 F.3d 262, 270 (4th Cir. 2020). "[A]lthough the . . . court must explain its reasons for choosing a particular sentence in sufficient detail to assure the appellate court that it provided an individualized

assessment of the case before it, it is not required to 'discuss each § 3553(a) factor extensively, but need only provide a rationale tailored to the particular case at hand and adequate to permit meaningful appellate review.'" *United States v. Arbaugh*, 951 F.3d 167, 175 (4th Cir. 2020), cert. denied, --- U.S. ----, 141 S. Ct., 382, 208 L.Ed. 2d 101 (2020). An "explanation is sufficient if it, although somewhat briefly, outlines the defendant's particular history and characteristics not merely in passing or after the fact, but as part of its analysis of the statutory factors and in response to defense counsel's arguments . . . " *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017) (alterations and internal quotation marks omitted). The admonition that a court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why it has rejected those arguments "focuses on the whole of a defendant's argument and does not require the court to address every argument a defendant makes." *United States v. Vanderhorst*, 2021 WL 2947728 (4th Cir. 2021), citing *Arbaugh* at 951 F.3d at 174.

A. <u>The Sentencing Hearing</u>.

The magistrate court first confirmed that the government had no objections to the Presentence Report (PSR), then confirmed defense counsel's objections to Paragraphs 13 through 16 of the PSR. The court summarized those paragraphs for the record, giving the defendant the benefit of the doubt with respect to the allegations contained therein:

> "So . . . for the record, paragraphs 13 through 16 are essentially paragraphs dealing with summaries of medical observations that suggest that there has been a pattern of abuse with respect to the victim. I am going to leave the paragraphs in the presentence report; however, I take your concern Ms. Mertz, that there is no direct evidence that would specifically link Mr. Masidonio to those injuries, to cause those injuries. In fact, there is some suggestion that there could be – in the presentence report that there could be an alternative source for those injuries assuming that those injuries are – and I think it – are the product of abuse. So I think given the uncertainty there, I will not consider paragraphs 13 through 16 in terms of fashioning a sentence with respect to Mr. Masidonio today." (Sentencing, p. 3)

After hearing from the government, defense counsel reiterated many of the positions taken in the defendant's written submission. The defense acknowledged that the defendant's life had unraveled for the last two years, but claimed he was now on the right path, primarily as a result of having spent 30 days in jail. (Sentencing at 6 – 10).

The magistrate court then heard from the defendant, who emphasized that he was not aware of the extent of his disorders prior to the report by Dr. Lynch, and that although he had not sought mental health treatment in the past, he would like the opportunity to finally address those issues. (Sentencing at 9-10).

B. The Magistrate Court's Sentence

The magistrate court recognized it was properly guided by both the statutory factors in 18 U.S.C. § 3553(a) and "the legislative direction to fashion a sentence that is sufficient but not greater than necessary to satisfy the purpose of the sentencing factors." (Sentencing at 10).

The court then methodically proceeded through the § 3553(a) factors. Addressing the nature and circumstances of the offense, the court referenced the nature of the injury, the age of the child, the fact that the child was in the defendant's care, the defendant's lie to medical staff regarding the injury, the defendant's preventing the child from speaking privately with medical personnel, and the defendant's instruction to the child to lie by saying it was an accident. (Sentencing 10 – 12).

The court specifically related the physical and psychological trauma that was inflicted on the child to the difficulties the defendant himself faced. The court made note of how the struggles the defendant had in the past continued to affect him today, and compared them with the struggles the child may face, telling the defendant, "I'm not sure how you could expect this child to be any different." (Sentencing at 11).

8

Continuing the § 3553(a) analysis, the court addressed the history and characteristics of the defendant, and commended the defense for an outstanding job in putting together "a full picture of your history, of who you are, from the information in the presentence report to the letters from your family, coworkers and others, and particularly, the Lynch report." The court stated, "with respect to the history and characteristics of you, there is a lot that explains how you got to that date in August of 2020. The discussion of your physical challenges, your psychological challenges or emotional challenges are clear and are deep, and I am very happy that you're addressing those." But the court concluded that the mitigating factors did not outweigh the aggravating factors. (Sentencing at 12).

The court acknowledged that there had been a significant passage of time between the offense date and the sentencing but noted that the delay presented an opportunity for the defendant to improve himself which he did not take. He told the defendant that if he had spent those two years improving himself, it would have made a difference in the court's sentence, "[a]nd over those two years – more than two years, you would have had an opportunity to put yourself in a better position or a worse position . . . [T]hose two years could have helped you and helped explain to the Court that this really was an aberration or explain to the Court or show the Court that you engaged in a pattern of abusive conduct to family members, and that's what the record shows." (Sentencing at 13.) The court questioned the sincerity of some of the defendant's recent efforts to improve himself and noted that the primary factor that should truly have shocked the defendant into a change of heart was breaking his stepson's arm. (Sentencing at 13).

The court addressed the need for the sentence to reflect the seriousness of the offense, the need to promote a respect for the law, and the need for deterrence, noting the pattern of assaultive conduct that "began at least in August of 2020 and carried through April of 2022." Recognizing

9

the defendant's need for treatment, the court explained that it's sentence, which included mental health treatment, anger management, and substance abuse treatment (if needed) "will promote the treatment you need and give you an opportunity to receive the treatment you need." (Sentencing at 14 - 16)

C. <u>Argument</u>

In its Amended Brief, the defense broke its mitigation argument into ten categories, and alleges the court failed to address the following nine arguments:

(1) the defendant was engaged in and learning from counseling and therapy;

(2) he had held his current job steadily since June, broadening his responsibilities;

(3) he admitted that his actions hurt his stepson;

(4) he suffers from mental health problems including Central Auditory Processing Disorder, Duane's Syndrome, and PTSD, all of which affect his perceptions during interactions with others (Lynch Report);

(5) he is a 12-year Army veteran who saw combat in Iraq;

(6) he had no criminal record prior to this incident;

(7) he had a troubled upbringing;

(8) he had benefited from anger management classes; and

(9) he had "sought mental health treatment' and was awaiting entry into the program.

Mitigation arguments 1, 4, 7, 8, and 9 overlap and were adequately addressed by the magistrate court on several occasions, including when the court specifically noted the difficulties in the defendant's past: "In fact, it's worth noting that in reviewing your history, the difficulties you faced, the struggles you had continue to affect you today. I'm not sure how you could expect this child to be any different." (Sentencing at 11). The court specifically mentioned the Lynch

report as having presented a particularly full picture of the defendant's history, and also separately referenced the letters submitted on the defendant's behalf: "Ms. Mertz has done an outstanding job putting together a full picture of your history, of who you are, from the information in the presentence report to the letters from your family, coworkers and others, and particularly, the Lynch report." (Sentencing at 11). The court continued its analysis, noting its appreciation that the defendant was addressing his challenges, "And there is – with respect to the history and characteristics of you, there is a lot that explains how you got to that date in August of 2020. The discussion of your physical challenges, your psychological challenges or emotional challenges are clear and are deep, and I am very happy that you're addressing those." (Sentencing at 12).

The defendant claims the judge did "little more than acknowledge the (Lynch) report." (Def. Brief at 13). However, because the Lynch report was filed under seal, the magistrate court reasonably did not extensively discuss the defendant's mental issues; however, it is clear from the court's remarks about the defendant's mental health that the magistrate court considered the defendant's mental health arguments.

Most of the remaining mitigation arguments put forward by the defense were frivolous. First, although the defendant alleges that the judge ignored the fact that he had held a job since June, the judge referenced a letter he had received from one of the defendant's coworkers. (Sentencing at 12). Moreover, the significant factor is that although a total of 27 months elapsed between the assault on the child and the sentencing, the defendant held a job for fewer than six of those months. While that is a step in the right direction, it was not a significant factor in the defendant's sentencing, particularly considering the defendant did not bother to obtain a job until after charges were brought in this case, suggesting the impetus was to put him in a good light, which is precisely what the court suggested, "I hope you've made strides since you were originally

11

arrested, but I do question the sincerity of some of those efforts on your part. If you were going to genuinely be shocked into addressing your issues, it would have happened in 2020 when you were in the hospital with a crying child undergoing emergency surgery to repair an arm that you broke." (Sentencing at 13).

Second, the defendant complains that the judge ignored that "he admitted that his actions hurt his stepson." The admission that he caused harm appears to be drawn solely from defense counsel's one-line statement in her Position on Sentencing. (Def. Brief at 1). The defendant did not submit a separate statement and has not, to the government's knowledge, personally acknowledged the harm he caused to his stepson. A one-line *mea culpa* cannot compare to the physical and mental harm inflicted on the child and is not a significant sentencing factor.

Third, the defendant complains that the court did not address the fact that he had no criminal record prior to this incident. Although the defendant had no convictions prior to this offense, in 2016 he was charged with Making a False Statement and Larceny of Government. (PSR ¶ 23). Considering this in conjunction with the two arrests for assault which followed in the steps of this offense, the argument that he lacked a prior criminal record is frivolous.

Finally, the defendant points out the court did not specifically address the defendant's military service and his combat in Iraq. While military service may be considered as an argument in mitigation, the defendant's Other than Honorable discharge diminishes its impact. Furthermore, the court had clearly read the letters from his family as well as the Lynch report, both of which address his military service in some detail.

A court is not required to "address every argument a defendant makes, as we have held that district courts need not robotically tick through § 3553(a)'s every subsection." *United States v. Arbaugh*, 951 F.3d, 167, 174 (4th Cir. 2020); "At bottom, we look to whether the sentencing court

has said "enough to satisfy" us that the court "has considered the parties' arguments and has a reasoned basis for exercising [its] own decision-making authority." *Arbaugh,* 951 F.3d at 174.

The court methodically considered the defendant's arguments and explained why it fashioned the sentence the way it did. As the court stated, it imposed a sentence it thought was sufficient but not greater than necessary to satisfy the 18 U.S.C. § 3553(a) factors. Although the court believed a six-month sentence was appropriate, it imposed a shorter sentence because it saw the need for a probationary period tailored to the defendant's needs. (Sentencing at 15, 16).

"[D]istrict courts have extremely broad discretion when determining the weight to be given each of the § 3553(a) factors. *See Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586 (2007). The court's words, the context, and the record all make clear that the court considered the defendant's arguments and rejected them. "The adequacy of the sentencing court's explanation depends on the complexity of each case" and the facts and arguments presented. *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017). This was not a complex case, nor were the arguments presented complex; accordingly, they did not require a needlessly complex explanation.

There is no shortcoming in the magistrate court's response to defendant's arguments; nevertheless, a shortcoming is harmless, if it "did not have a substantial and injurious effect or influence on the result and we can say with fair assurance that the district court's explicit consideration of the defendant's arguments would not have affected the sentence imposed." *United States v. Boulware*, 604 F.3d 832, 838 (4th Cir. 2010); *see United States v. Ross*, 912 F.3d 740, 745 (4th Cir. 2019). This is not a case where the court ignored the arguments made by the defendant in support of his request for probation. Nor did the court passively hear the arguments and dismiss them. Rather, it can confidently be said that the court heard and considered the defendant's arguments, then imposed an individualized sentence tailored to the defendant's offense and the

13

goals to be accomplished. The judge provided a substantive "explanation for the sentence imposed," which "left no doubt regarding the court's reasons for selecting the particular sentence that it did." *United States v. Allmendinger*, 706 F.3d 330, 343 (4th Cir. 2013).

### III. The sentence was not substantively unreasonable.

The defendant next argues that his four-month term of incarceration and five years of probation are substantively unreasonable given the totality of the circumstances. Substantive reasonableness is reviewed under a "deferential abuse-of-discretion standard." *See Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). When considering the substantive reasonableness of a prison term, a court "examine[s] the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *Arbaugh*, 951 F.3d 167 at 176, citing *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010).

It was reasonable for the court to impose a term of four months' imprisonment followed by five years' probation. The factors impacting the court's sentence include the defendant's violent assault of a child, which broke the child's arm in two places and caused him to undergo emergency surgery, and that the defendant lied to medical staff about how the injury occurred and deprived staff of the information they needed in order to treat the child properly, because the defendant was so "concerned about your own well-being, staying out of trouble, not getting caught, that you intentionally gave the medical staff wrong information about how the injury occurred." (Sentencing at 11). The court further noted the defendant prevented the child from speaking privately with the victim and told the victim to lie to medical staff about how the injury occurred. (Sentencing at 11).

14

The court considered the mitigating circumstances, and specifically referred to the defendant's physical, psychological, and emotional challenges, but also noted that the defendant had an extended period of time since the offense during which he could have improved himself, but instead, committed two more assaults. These comments – and the court's explanation as a whole - confirm the appropriateness of his sentence under the § 3553(a) rubric and the court's appropriate exercise of discretion in weighing the factors involved.

**IV. The Oral Pronouncement at Sentencing Was Correct**

The orally pronounced sentence was four months of incarceration followed by five years of probation, but due to a clerical error in the written judgment the court issued an amended judgment which moved the four months of incarceration under the list of conditions of probation. Dkts. 35, 38. "The primacy of the oral sentence over the written judgment is well established, in our circuit and others." *United States v. Rogers,* 961 F.3d, 291, 296 (4th Cir. 2020). Because the orally pronounced sentence was correct, on remand the magistrate court should issue an amended judgment tracking the oral pronouncement.

**CONCLUSION**

For the reasons above, the Court should affirm the sentence orally imposed by the magistrate court and remand for its reinstatement.

                            Respectfully submitted,

                            Jessica D. Aber
                            United States Attorney

By:          /s/
              Patricia Haynes (Bar No. 49038)
              Assistant United States Attorney
              Attorney for the United States
              2100 Jamieson Avenue
              Alexandria, Virginia 22314
              Email Address: patricia.haynes@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on the 3rd day of February 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notification of such filing (NEF) to all counsel of record.

_____/s/_____
Patricia Haynes
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office Number: (703) 299-3700
Facsimile Number: (703) 299-3982
Email Address: patricia.haynes@usdoj.gov
